IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAHAD HASSAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12-cv-6183 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| ANTHONY SQUEO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mahad Hassan an Amended Complaint *pro se* on November 19, 2012, alleging pursuant to 42 U.S.C. §1983 that Anthony Squeo, a Cook County Sheriff's Deputy and correctional officer at Cook County Jail, was the officer on duty when Hassan was attacked by four inmates and beaten and stabbed and that Officer Squeo failed to protect Hassan. This Court appointed counsel for Hassan when the case proceeded to dispositive motions.[1] Defendant Squeo filed a motion for summary judgment [36] on August 13, 2013, arguing that Hassan failed to exhaust his administrative remedies, Officer Squeo did not act with deliberate indifference in response to the altercation in which Hassan was attacked, and Officer Squeo is entitled to qualified immunity. For the reasons set forth herein the Court grants defendant's motion.

**Background**

The following facts are undisputed.[2] On May 6, 2012, Hassan was a pretrial detainee at Cook County Jail and Officer Anthony Squeo was a Cook County Sheriff's Deputy and correctional officer on duty in Division 10, Tier 2-D. Hassan was playing cards with a fellow

---

[1] This Court thanks plaintiff's appointed counsel for his able assistance in this matter.
[2] Plaintiff did not provide citations to the record in his statement of additional facts as is required by Local Rule 56.1(b)(3)(C).

inmate named Miguel in the dayroom around 6:00 p.m. on May 6, 2012. Defendant Squeo was behind glass in the interlock observing the dayroom.

At 6:00 p.m. dinner was called and Hassan collected the playing cards to go to dinner. A dispute arose between Hassan and two other inmates over ownership of the cards. The two inmates tried to steal Hassan's cards and then attacked him. Hassan testified that two other inmates joined in the fight. According to Hassan, Officer Squeo opened the door to the dayroom within roughly a minute of the fight breaking out. Hassan testified that approximately 20 officers arrived within a few minutes of the attack or within 10 minutes of the attack starting.[3] Once the backup officers arrived with a "white shirt" lieutenant, the dayroom was opened and the situation contained.

Before the incident on May 6, 2012, Hassan had never spoken to Officer Squeo about feeling unsafe or that he might be attacked. Before the incident, Hassan said he had never felt fearful and described the incident, stating that "it was like an accident." (Dep. Tr. at 35:9). Hassan and the two inmates had never fought before and Hassan did not encounter them after the incident. Hassan refused protective custody, but did request to be moved to a different unit. That request was granted immediately.

Hassan testified that he understood the grievance process, that he read the rules on the form. Hassan also testified that he has difficulty reading and writing in English. Hassan stated that he had assistance from other inmates in filling out the grievance forms. Hassan filed three grievances. On May 9, 2012, three days after the incident, Hassan filed his first grievance (#2012X6978) complaining that his property had been taken after the May 6, 2012, incident. He

---

[3] Hassan testified both that it took a "few minutes" for officers to arrive in the dayroom (Dep. Tr. at 42:20-23) and in response to the question "So how do you know that he didn't already call the 1010?" answered "Because I saw him. When they call they use the – they come quickly. They call the radio. So when it was – after look, he didn't – almost like 10 minutes. They didn't care. He just watching the fighting." (Dep. Tr. at 40:22-41:3).

2

did not appeal the response to the grievance. On June 3, 2012, Hassan submitted his second grievance (#2012X8096) stemming from the incident, complaining that he had the tip of a pen lodged in his head and needed medical attention. The response indicated that Hassan had been seen by a medical provider on June 18, 2012, and no foreign body was found in his forehead. Hassan filed his third grievance on July 22, 2012, (#2012X10743) complaining that the denial of a remedy for Hassan's head injury (the tip of the pen lodged in his forehead) constituted medical negligence and he requested money damages. These were the only grievances Hassan filed and none mentioned the conduct of Officer Squeo despite all three making claims arising from the May 6, 2012, attack in the dayroom.

Although Hassan testified that he was not given any rule book or procedure manual upon his arrival at Cook County Jail, he also testified that he signed his Jail History Card, which states "I have received my Inmate Rules and Regulations." Hassan was eventually found not guilty by reason of insanity for the underlying charge for which he was a detainee at Cook County Jail. Following trial, he was sent to a mental institution for evaluation. As early as 2010, Hassan had been found unfit to stand trial and was referred to the Department of Health and Human Services for "treatment." At least one psychiatric report was filed in the underlying criminal case regarding Hassan's competency. Hassan testified that he takes two medications to treat his mental condition, including hallucinations.

**Legal Standard**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding whether to grant summary judgment, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id*. at 255. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc*., 987 F.2d 1293, 1295 (7th Cir. 1993).

**Discussion**

Defendant Squeo moves for summary judgment asserting that Hassan's claims must fail as a matter of law for three reasons: (1) Hassan failed to exhaust his administrative remedies by failing to include his claims against Squeo in any of the three grievances that he filed; (2) Squeo did not act with deliberate indifference in failing to protect Hassan from an attack that neither Squeo nor Hassan knew was about to occur and Squeo followed procedure by waiting for backup before intervening; and (3) Squeo is entitled to qualified immunity. Hassan argues that summary judgment should be denied because he did not have counsel and did not conduct any discovery of his own; factual issues exist as to whether Hassan's mental condition and difficulty with English prevented him from understanding the grievance process, and whether Squeo's response to the situation was reasonable where he opened the door to the dayroom and watched Hassan being beaten for ten minutes before backup arrived. Hassan further argues that a prison guard who unreasonably delays protecting a prisoner from an ongoing attack has no immunity.

4

*I. Exhaustion of Administrative Remedies*

Exhaustion of administrative remedies is a precondition to suit. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Failure to exhaust administrative remedies is an affirmative defense and thus defendant has the burden of proving the defense. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000).

Hassan relies on *Abel v. Pierson,* 2008 U.S. Dist. LEXIS 86444, *7 (S.D. Ill. Feb. 13, 2008), and *Bojorquez v. Fitzsimmons*, 2009 U.S. Dist. LEXIS 22929 (C.D. Ill. Mar. 23, 2009) to support his argument that a language barrier may excuse the failure to exhaust administrative remedies. In *Abel v. Pierson*, the court denied summary judgment finding that crucial questions existed regarding whether Abel, who spoke very limited English, was given appropriate assistance in completing a grievance where he was never provided instructions in Spanish, and he repeatedly sought the assistance of a counselor. The counselor testified that she did not speak Spanish and that if a Spanish speaking inmate sought assistance from her she would "[p]robably have to get in touch with a Spanish speaking person," but she could not recall any Spanish speaking inmates seeking any assistance with grievances. *Abel*, 2008 U.S. Dist. LEXIS 86444 at *10.

Similarly, in *Bojorquez v. Fitzsimmons*, 2009 U.S. Dist. LEXIS 22929 (C.D. Ill. Mar. 23, 2009), the plaintiff filed grievances, two that discussed the claims at issue in the lawsuit, but they were written in Spanish and the Administrative Review Board did not respond to his claims despite noting that he had minimal communication skills. *Id.* at *13. The court had concerns

about the process and found that the defendants failed to meet their burden to show Bojorquez did not exhaust the remedies that were available to him. *Id.* at *14.

In contrast, the court in *Aleman v. Dart*, 2012 U.S. Dist. LEXIS 17974 (N.D. Ill. Feb. 14, 2012) (Dow, J.), granted summary judgment based on the plaintiff's failure to exhaust his administrative remedies. There, Aleman spoke only Spanish, but based on his testimony that he had used the grievance procedure in the past and that he did not testify that the procedures were unavailable or that he did not understand them the court found language did not impede his use of the process. It was undisputed that Aleman did not file a grievance on the particular claims alleged in his Second Amended Complant. *Id.* at *17. Unlike in *Abel* and *Bojorquez*, Aleman did not seek the assistance of prison officials, but instead he chose to rely on help from other inmates. The court found that choosing to rely on fellow inmates rather than seeking assistance from prison officials does not excuse failure to exhaust. *Id.* at *18. The court concluded that, based on the record presented, Aleman had administrative remedies available to him despite his lack of competency with English. *Id.*at *22.

Here, it is undisputed that none of the grievances that Hassan filed contained any complaints about the conduct of Officer Squeo. While Hassan argues that his ability to understand the procedure is a question of fact remaining to be resolved, his testimony indicates that he understood the procedure. Further, the fact that he filed three grievances and received some relief supports the inference that Hassan understood that he could file a grievance with jail officials if he had complaints. Although it is undisputed that Hassan has some difficulty reading and writing in English, he sought assistance from fellow inmates to help him file three grievances. Therefore, the instant case is similar to the situation in *Aleman*. Despite Hassan's difficulties with English he was able to file three separate grievances each arising from the

6

incident on May 6, 2012, but none addressing in even a tangential way the claim of failure to protect now before the court. There is no evidence in the record that prison officials did not respond to a grievance or otherwise prevented Hassan from exhausting his administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir. 2006).

Furthermore, despite Hassan's argument that a factual question exists based on his mental health condition, there is no evidence to support that argument in the record. While it is undisputed that Hassan suffers from some mental condition that requires medication, his testimony clearly stated that he was taking his medication and nothing indicates that he was suffering from hallucinations or other problems that prevented him from understanding the grievance process or being understood either at the time of his grievances or during his deposition. On the contrary, it appears that despite his mental health issues and language difficulties Hassan was able to seek the assistance of fellow inmates and make his complaints sufficiently understood to those individuals for him to file grievances and to file the instant case. Thus, there is no factual issue for a trier of fact to resolve. Hassan has therefore failed to exhaust his administrative remedies and is precluded from bringing the instant claim.

*II. Failure to Protect*

Defendant Squeo argues that, even if Hassan had exhausted his administrative remedies or Hassan's failure to do so should be excused, he is entitled to judgment as a matter of law because there is no genuine issue of material fact showing that Squeo acted with deliberate indifference in responding to the attack on Hassan. A pretrial detainee's section 1983 claims are analyzed under the Due Process clause of the Fourteenth Amendment rather than the Eighth Amendment's Cruel and Unusual Punishment clause. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979); *see also Butera v. Cottey,* 285 F.3d 601, 605 (7th

7

Cir. 2002). Nevertheless, the standards generally are considered analogous and the protections for pretrial detainees are at least as great as the protection given to inmates under the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979. 77 L.Ed. 2d 605 (1983); *see also Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 517 (7th Cir. 2002). Prison officials have a duty to protect inmates, including pretrial detainees, from violence inflicted by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994). "In order to prove deliberate indifference a plaintiff must show the defendant was 'aware of a substantial risk of serious injury to [plaintiff] but nevertheless failed to take appropriate steps to protect him from a known danger.'" *Guzman v. Sheahan,* 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera,* 285 F.3d at 605).

The instant case is similar to the situation in *Guzman v. Sheahan*, where a pretrial detainee claimed he was attacked by a fellow inmate and the officer on duty failed to protect him from the attack. *Id.* at 853-854. In *Guzman*, as in this case, the plaintiff admitted that he had never interacted with or been threatened by the inmate that attacked him and had not notified prison officials that he had any concerns. *Id.* at 858. The Seventh Circuit affirmed summary judgment in favor of the defendant because there was no evidence in the record that the defendant officer had actual knowledge of a serious risk of harm to the plaintiff and, even if there was such evidence, the defendant officer acted reasonably under the circumstances. *Id.* The court found the defendant's response reasonable even though she did not give any verbal commands for the fight to cease and even if the fight lasted three to six minutes before she obtained backup, she was not required to intervene. *Id.* The court noted that the defendant officer may have deviated from standard procedure by not issuing verbal commands and leaving her post to find

8

officers for backup, but those deviations did not rise to the level of deliberate indifference. *Id.* at 859.

Here, it is undisputed that neither Officer Squeo nor Hassan anticipated the attack or were aware of any threat to Hassan's safety prior to the attack in the dayroom on May 6, 2012. Hassan testified that he had never before encountered the inmates that attacked him and he had never before felt threatened. Therefore, no known danger existed from which Officer Squeo had a duty to protect Hassan.

Hassan essentially claims that Officer Squeo waited too long to respond to the attack. However, "[p]roving that an officer was deliberately indifferent to the safety of a detainee requires more than a showing of negligent or even grossly negligent behavior. The officer must have acted with the equivalent of criminal recklessness." *Guzman*, 495 F.3d at 857 (internal citations omitted). Hassan contends that additional officer backup took as long as ten minutes to arrive and Officer Squeo simply watched the attack. Hassan alleges that he was attacked by four inmates and he was stabbed in the course of the altercation. Officer Squeo contends that he immediately called a 10-10 to secure backup and there is testimony from Hassan that it took only "a few minutes" for roughly 20 officers to arrive. "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to breakup a fight between two inmates when the circumstances make it clear that such action would put [him] in significant jeopardy." *Id.* at 858; *Peate v. McCann,* 294 F.3d 879, 883 (7th Cir. 2002). While it is undisputed that Officer Squeo did not verbally order the attack to cease, that failure does not rise to the level of deliberate indifference. "The mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Guzman*, 495 at 857. Accordingly, this Court finds that defendant did not act with deliberate indifference to Hassan's safety.

9

Because this Court finds that Hassan failed to exhaust his administrative remedies and no constitutional violation occurred, it need not reach the issue of whether Officer Squeo is entitled to qualified immunity. Based on the foregoing, summary judgment is granted in favor of defendant Squeo.

IT IS SO ORDERED.

Date: February 11, 2014

Entered: _____
United States District Judge